### HENRY A. GOFF'S CASE.

Suffolk.   October 20, 1919. — November 25, 1919.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Workmen's Compensation Act*, To whom act applies, Procedure.  *Agency*, What constitutes.  *Partnership*.

Where a single member of the Industrial Accident Board finds, upon evidence warranting the finding, that a claimant at the time when he received his injuries was hired by a foreman of the employer as a woodchopper and paid by the foreman, with money furnished by the employer, $2 a cord for wood chopped, and that he was not an independent contractor, and such finding is affirmed and adopted by the Industrial Accident Board, it must stand on an appeal to this court from a decree of the Superior Court in accordance with the decision of the Industrial Accident Board.

At the hearing of a claim for compensation before a single member of the Industrial Accident Board, it appeared in evidence that the claimant at the time of his injury was employed by a partnership, apparently conducting business under the name of one of the partners. There was no finding as to the form of the insurance policy and it was not produced in evidence. The single member found that the partner in whose name the business was conducted "had a partnership interest in the work which was being conducted at the time of the injury and that the policy of insurance was effective at the time of said injury." The record of the hearing before the full board stated the questions there raised, which did not include any question as to whether the policy of insurance was applicable. The board affirmed and adopted the findings and rulings of the single member and a decree was entered in the Superior Court in accordance therewith. On an appeal from such decree, the insurer contended that there could be no recovery because the claimant was employed by the partnership and the subscriber was one member of the partnership only. *Held*, that such a contention was not open to the insurer upon the record.

APPEAL to the Superior Court from a decision of the Industrial Accident Board awarding compensation to Henry A. Goff for injuries received on May 3, 1918.

All the material evidence before the single board member was reported. The evidence on the question, whether the claimant was an independent contractor or an employee, was as follows:

One Fred J. Humphrey, one of the partnership for whom

the claimant was doing work, testified that in March, 1918, the partnership had some men jobbing on the Sidney White lot and the witness continued on with the same men. Gould, Rider and probably Goff were working there at that time. They were being paid $2 a cord for cutting tops. The witness continued with that employment and paid the men the same amount of money for the work. The witness paid Gould for the cutting of the wood and he paid the others. On cross-examination, Humphrey testified in substance as follows: "Gould was working on this lot previous to the dissolving of the partnership. He was cutting the wood at so much a cord." The witness did not remember paying any wages for the cutting of the wood to Goff. At the time of the accident the witness understood that Goff was working for Gould. The arrangements with Gould were that he was to cut the wood and get $2 a cord. The witness did not know what Gould paid Goff for cutting the wood. "Although the witness was always present on the woodlot he did not direct the men what to do. They knew how the wood had to be cut. The witness considered Gould more in the nature of a foreman to look after the men rather than an independent contractor. There were axes and saws which the business furnished, but the witness could not say whether or not Gould brought his own tools. Gould was paid simply as a foreman and he paid the other men. There was no account on the witness's books that a man named Goff worked there. There were also other men working there about whom the witness did not know. The witness simply told Gould that he would give him so much for cutting off the tops and he, Gould, was to hire his own men. The reason he made these arrangements with Gould was because it was almost impossible at that time to get help, and perhaps men would come around for work when he, the witness, would not be there. He, therefore, authorized Gould to hire his own men. . . . All orders would have to be given to Gould and he would give them to the other men. Woodchoppers furnish their own axes as a rule. All the tools necessary for the work done, axes and saws, were furnished by the business. Woodchoppers get along better usually when they have their own axes."

The claimant testified in substance as follows in direct examination: He was a farmer in the summer time and in the winter and fall he did wood cutting. The January before his accident

he went to work on the Sidney White lot and continued from that time until his accident with the exception of a few weeks. For cutting the wood he received $2 a cord. He was in what he called a partnership with Gould and they boarded themselves. They chopped wood together and Gould paid him. Fred J. Humphrey paid Gould for the work and Gould paid him. On cross-examination he testified in substance that he first went to work on the Sidney White lot in January of 1918. He continued to cut wood from that time up to March when he went to work at the sawmill. The snow became so deep about that time that they had to stop cutting the wood. A man named Rider, who was working on the job, told him in the January before he went to work that George Gould was the foreman and wanted the witness to go over and go to work there. The witness consequently went over to see Gould and made a trade with him. He, the witness, stopped cutting wood in March and began again in April. When the witness went to work on the Sidney White lot he "went into partnership with Gould." He and Gould were to hire a cottage between them, keep "bachelor halls," and divide up at the end of the week. Gould received $2 a cord from Humphrey for cutting the wood. Humphrey did not personally tell the witness where to chop. He told Gould and the latter told the witness. The witness received no money from Humphrey or Gray in the line of direct wages. Gould paid him for his work. On redirect examination, the witness testified that when Humphrey did not bring the money to Gould, the latter went after it. Gould acted as foreman. There were five or six men employed at one time to cut the wood. A boy named Madden was employed to do some wood cutting. He was paid by Gould, as far as the witness knew. Gould and the witness did most of the work on the place, and he, the witness, "considered himself Gould's partner." The two men lived together, bought their eatables, and at the end of the week divided the expenses. The witness understood that he was working for Ora S. Gray and Company. The claimant and Gould have worked together on different jobs and have agreed very well. "Gould was considered only the claimant's boss as far as paying him was concerned. The witness felt that both men were equal and that he could boss Gould as well as the latter could boss him. Both of them worked for Gray and Humphrey and were paid their wages by the cord."

The findings of the single member of the board on this subject were as follows:

"The claimant was an employee of the subscriber at the time of his injury on May 3, 1918, and said injury arose out of and in the course of his employment. . . . The record shows that Fred J. Humphrey, who continued the business for the partnership under the agreement of March 5, considered Gould his foreman. 'Gould was paid simply as a foreman and he paid the other men.' Humphrey authorized Gould to hire his own men and allowed Gould at the rate of $2 per cord for their work. Gould was the foreman in charge at the time Goff became an employee of the subscriber, and no matter by what term Goff referred to the contract of hire, it is found that he was an employee of the subscriber and not an independent contractor. It has not been shown in evidence that the subscriber was a party to any alleged partnership arrangement between Gould and Goff. Gould was hired as a foreman, with power to hire others to work for the subscribers, being allowed a stipulated sum per cord with which to pay the subscriber's men. Payment by the cord is the customary method of paying men for cutting wood, and the position of the claimant and the other employees is no different than that of the thousands of men in the industries of Massachusetts who perform their work at a stipulated price per piece. Gould had no contract to cut any definite amount of wood, or to cut wood for any specified length of time, or to cut all the wood solely on a particular piece of land, or to do anything except cut wood and hire men to work under him as foreman to cut wood for which he was allowed the fixed price of $2 per cord. The only difference between Gould and most foremen supervising the work of piece employees is that Gould, as a matter of convenience to his employer, was vested not only with authority to hire men, but to pay them. This fact does not convert him from employee into independent contractor."

The findings of the single member of the board on the question of the responsibility of the insurer were as follows:

"As far as the partnership arrangement is concerned, it is found that Ora S. Gray had a partnership interest in the work which was being conducted at the time of the injury and that the policy of insurance was effective at the time of said injury."

The findings and rulings of the single member were affirmed and adopted by the Industrial Accident Board.

The case was heard in the Superior Court by *J. F. Brown*, J., by whose order a decree was entered that the insurer pay to the claimant the sum of $390.29 as payment of compensation from May 13, 1918, to March 3, 1919. The insurer appealed.

The case was submitted on briefs.

*E. I. Taylor*, for the insurer.

*J. Hamlin & J. W. Mason*, for the claimant.

Rugg, C. J. The plaintiff was injured in the course of and arising out of his employment as a woodchopper. His compensation was at the rate of $2 per cord. The finding that he was an employee and not an independent contractor was not erroneous as matter of law. *McAllister's Case*, 229 Mass. 193. The case upon this point is distinguishable from *Centrello's Case*, 232 Mass. 456, and *Winslow's Case*, 232 Mass. 458.

There also was evidence to support the finding that the claimant was a fellow workman with one Gould and not a partner with him. There was evidence that the latter was a foreman for the employer. The finding of the board on this point must stand.

Apparently it is not in dispute between the parties that the claimant at the time of his injury was working for a copartnership composed of Ora S. Gray and Fred J. Humphrey. Although there is no express finding upon the point, seemingly the partnership business was conducted under the name of Ora S. Gray; confessedly that partnership existed when the employment of the claimant began. There was evidence that shortly before the injury to the claimant, Gray and Humphrey had a partial accounting, agreed that the partnership should be dissolved, so far as concerned new business, and that unfinished operations, including that upon which the claimant was employed, should be completed for the partnership by Humphrey. This warranted the conclusion that the partnership continued as to the lot upon which the claimant was chopping.

The chief argument of the insurer is that there can be no recovery because the claimant was working for the partnership composed of Gray and Humphrey and that the subscriber was Ora S. Gray alone. That point, however, is not open upon this record. The trial of the case heretofore as disclosed on the record has not proceeded on that footing. The findings and decision of the Industrial Accident Board contain this statement: "Questions:

(1) Whether the claimant was an employee of the subscriber at the time of the injury, May 3, 1918, or whether he was an independent contractor. (2) Whether or not the claimant's left eye is so injured as to entitle him to specific compensation." The record is bare of any indication that the insurer did not accept this as a complete and accurate statement of the issues then raised and presented for decision. There is no finding as to the form of the insurance policy. It does not seem to have been produced in evidence. Whether it was in the name of Gray alone or of the partnership doing business under the name of Ora S. Gray cannot be determined on the evidence reported. It would be manifestly unjust to permit the case to turn now upon a contention not raised at the trial and as to which evidence was not directed. *Mallory's Case,* 231 Mass. 225.

The second question considered by the Industrial Accident Board has not been argued and appears now to present no point of law.

*Decree affirmed.*